SOUTHERN COAST CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26971. Promulgated November 27, 1951.

*Sam G. Winstead, Esq.*, for the petitioner.
*D. Louis Bergeron, Esq.*, for the respondent.

## OPINION.

OPPER, *Judge:* The question is whether amounts concededly expended by petitioner are deductible only as a short term capital loss by reason of the provisions of section 117 (g) (2), Internal Revenue

Code.[1] This in turn depends, as the case is presented, on whether it can be said that within the meaning of that section the expenditures in question were "losses attributable to the failure to exercise" an option "to buy * * * property."

Petitioner does not question that the natural gas it hoped to acquire was property, but urges that the section in dispute applies only to losses attributable "solely" to a failure to exercise an option and further, in what is perhaps different language for saying the same thing, that the loss was attributable not to the failure to exercise the option but to the failure to obtain the customer to whom it was intended that the gas would be sold.

In presenting its position petitioner notes that the section pertains to gains or losses attributable to the failure to exercise options and not to "all gains or losses attributable to" such options.[2] With that statement as a premise, there can of course be no quarrel. But we cannot follow petitioner to its conclusion. There is no suggestion in the legislation or its history that the failure to exercise the option must be the "sole" cause of the loss, and, indeed, it might be difficult to find any human situation in which a result follows solely from a single cause. See *Estate of George E. Howe*, 16 T. C. 1493, 1495. What petitioner would have us do is determine not so much the cause of the loss as the anterior reason leading to its decision to allow the option to lapse; and in this case to attribute the loss not to petitioner's failure to take up its option but to its lack of success in obtaining the customer who would make the option profitable. Such philosophic speculation would go far to make the section impossible of practical administration.

The sums expended by petitioner were treated by the parties at the time as the consideration for the option. Not once but three times did petitioner itself view them as consideration; first, in the enabling resolution;[3] second, in the option contract;[4] and third, in the resolu-

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

    \*      \*      \*      \*      \*      \*      \*

    (g) GAINS AND LOSSES FROM SHORT SALES, ETC.—For the purpose of this chapter—

    \*      \*      \*      \*      \*      \*      \*

    (2) gains or losses attributable to the failure to exercise privileges or options to buy or sell property shall be considered as short-term capital gains or losses.

[2] "Finally, under the amendment it is the gains or losses attributable to 'the failure to exercise' privileges or options to buy or sell property and not all gains or losses attributable to such privileges or options which are to be treated, as a matter of law and without regard to varying circumstances, as gains or losses from sales or exchanges of capital assets held for 1 year or less." Conference Report, 73rd Cong., 2nd Sess., H. Rept. 1385, p. 23.

[3] "* * * such advancements shall be in consideration of an option for the purchase of the entire output of such well, or wells * * *."

[4] "WHEREAS the Southern Community Gas Company * * * is desirous of obtaining from the Southern Coast Corporation [petitioner] advancement of cash and credit and to have the Southern Coast Corporation under its direction, re-work, re-complete and re-drill such well or wells as it may acquire * * *."

"And WHEREAS in consideration of such performance by the Southern Coast Corporation, the Southern Community Gas Company does hereby give to the Southern Gas Corporation an option to purchase all gas * * *."

tion dealing with the unsuccessful consequences of the venture where petitioner's own officials directed that "the consideration for such option shall be charged as an operating loss for the year 1944." The consideration so paid for the option was lost naturally enough when the option expired without being exercised. It is difficult to conceive of a loss more directly attributable not alone to the option, but in accordance with the legislative intent to "the failure to exercise" it. Cf. *Seth M. Milliken,* 15 T. C. 243. "We have reviewed carefully the legislative history of that section and can not find there any indication that Congress did not intend that a  *  *  *  corporation which lost the money paid for an option which it purchased but did not exercise should be exempted from its provisions." *Nordblom Associates, Inc.,* 15 T. C. 220, 224.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

JOHNSON, *J.,* dissenting: As the trier of the facts I cannot agree with the majority opinion. It gives undue emphasis to the so called option and the part that it played in the transaction. This appears to be due to a failure to consider the entire record upon which the transaction is based. Its premise that "amounts expended by petitioner" were "in consideration of an option to buy property" apparently rests alone upon sentences quoted from the documentary evidence, and no consideration appears to have been given to the other facts and circumstances surrounding and causing the execution of the instruments and the results flowing therefrom. In determining tax liability, the record as a whole should be considered.

Undoubtedly the basis of the option contract and the overall consideration which prompted its execution and the resultant expenditures by petitioner were due solely to petitioner's preparation to secure a supply of gas to enable it to fill its anticipated contract with the Chicago corporation and its affiliates.

That the option contract was secondary and subject to obtaining the Chicago contract is evidenced by recitals in the enabling resolution that the option was "to be executed only in the event this company is successful in the purchase" of the lines and customers, etc., of the Nueces corporation, etc., (affiliates of Chicago corporation) and furthermore, that the option "shall be exercised only in the event such gas covered by such option shall have been actually sold or contracted to sell by this company." While this provision does not apppear in the option contract, petitioner and the Gas Company were closely affiliated corporations, having largely the same officers, and it is reasonable to infer that both parties knew, when the option contract was executed, that the option to purchase would be exercised only if the Chicago con-

tract were secured. Petitioner and the Gas Company were both engaged in the sale of gas, and it would have been to their mutual benefit to procure the Chicago contract.

That the Gas Company did not regard the improvement of the wells by petitioner as the paramount or inducing cause of its contract with petitioner is evidenced by the fact that the contract did not obligate petitioner to expend any sum whatever; it was solely within the discretion of petitioner as to what sum, if any, it would expend for this purpose. Furthermore, under the evidence the Gas Company would have given petitioner the option to buy gas at the price stipulated in the contract without any obligation on the part of petitioner to do anything with reference to the wells.

Considering the record as a whole, we question the soundness of the premise upon which the majority opinion rests.

But regardless of the part the expenditures may have played, if any, in the purchase of the option, we unequivocally differ with the majority's conclusion that petitioner's loss was "attributable" to its "failure to exercise its option to buy."

The option was merely the right to buy gas at a price shown to be the market price in that field, and hence petitioner could not have sold the option at a profit. And furthermore, it was without dispute that petitioner's only market for the gas was in the event of its acquirement of the Chicago contract. Hence, if petitioner had exercised its option and bought the gas, it would not have averted or diminished, but rather increased its loss. The fact that an option to buy or sell property is involved in a transaction will not make the loss resulting therefrom a short term capital loss within the meaning of section 117 (g) (2), unless such loss is directly attributable to the failure to exercise the option. *Alvin J. Spring*, 4 T. C. 248. Cf. *Seth M. Milliken*, 15 T. C. 243.

We agree with the majority that it would be too narrow an interpretation of the section in dispute to say that it "applies only to losses attributable 'solely' to a failure to exercise an option," but we do think a reasonable interpretation would require that the "proximate" cause of the loss was attributable to the failure to exercise the option, which is not the case here.